Your Honor, there are two main issues in this case. The first issue is whether this court has jurisdiction to review the Board of Immigration Appeals determination that the petitioner engaged in terrorist activity by providing material support to a terrorist organization. And the second issue before this court is whether the definition that the Board of Immigration Appeals in its decision matter of S.K. adopted raises a serious constitutional question because it's so much broader than the common understanding of the word terrorism. As to the first issue, the REAL-ID Act has restored the court's jurisdiction over all questions of law and statutory interpretation, as well as all questions of law and facts, mixed questions of law and facts. So the court does have jurisdiction over this issue. Counsel, let me just ask about the asylum claim. Don't you agree that under bell-out v. Ashcroft, this court lacks jurisdiction over the asylum claim? Your Honor, the case of bell-out is being superseded by the REAL-ID Act. REAL-ID Act specifically states that all questions of law and statutory interpretation can be reviewed by this court, which means that questions regarding whether an activity constitutes terrorist activity under the INA is a question of statutory interpretation, and this court has jurisdiction over that. The second issue, Your Honor, is whether the BIA's definition in matter of S.K., which is so contrary to the common notion of the term terrorism and terrorist organization, raises an issue. I would find that argument easier to accept if the statute simply said terrorism and didn't then define terrorism. But the definition in the statute seems to be very broad. I agree with you that it's a very broad, and I would even say unusually broad, definition of terrorism. But as I look at the statute, the statute is very broad. Yes, Your Honor. It is broad. However, one of the canons of statutory interpretations is that when an interpretation of an ambiguous statute, and I believe the courts agree that it's an ambiguous statute. Well, I said broad. I didn't say ambiguous. You're going to have to work on the ambiguous part with me. Your Honor, when a statute is broad and it raises a serious constitutional issue, the court should avoid that interpretation. That's what the Supreme Court did in Zadvydas v. Davis when it interpreted the post-removal detention statute, which said that, which the government interpreted as indefinite detention of aliens. The court said that this would be unconstitutionally suspect. In this case, if you look at the language of the statute, the way it's interpreted by the board does not take into account either the purpose of the organization, nor does it take into account the nature of the regime that the organization is opposing, does not take into account self-defense, it does not take into account duress. It is so contrary to what we think when you think about terrorism that I think that this interpretation is constitutionally suspect. Let me give you an example. Under the board's definition, for example, a flight attendant who happens to give a glass of water to a hijacker will be a terrorist under this definition, clearly under duress, but still. Similarly, a group of people or an organization that resists a country that's involved in genocide, for example, would also be a terrorist organization. Basically under this definition, almost any terrorist, excuse me, under this definition, almost any armed resistance against an established government would constitute terrorist activity. What's very interesting about this case also is that in matter of SK, one of the board members said that he had serious doubts as that's what Congress intended. He said that it's highly doubtful that Congress intended the statute to be applied so broadly. However, he said that he was forced to go with the majority because the language of the statute said that terrorist activity constitutes these acts. However, I believe the best, we believe the best way to prepare this, I mean to interpret this statute would be to look at the term terrorist activity or terrorist organization in the context in which. So, for example, in a context of an armed, in an armed conflict situation, for example, the use of force would not be terrorist activity because. Even if there were civilian casualties as collateral damage to acts on government troops? Your Honor, if it's an armed conflict, international law recognizes certain rules of law, so that would not come within the definition. So, so that would just be collateral damage that's being caught in a war zone? Yes, Your Honor. That, yes, yes, Your Honor. Your Honor, in this case, the petitioner was a member of an organization called Oromo Liberation Front. What standards would we apply to the narrow definition? How would we measure whether or not the cause is just? Your Honor, in a matter of escape, the respondent in that case, the alien in that case, argued that you apply a totality of circumstances test, which takes into account the nature of the regime that is involved. You take into account whether the use of force is incidental to self-defense. You take into account whether the regime is illegitimate under international law. So, so it would be OK if we, if we listed the IRA, but it would not be OK in this particular case where there's a civil war going on in Ethiopia? Yes, Your Honor. I would say that there has to be a determination. Obviously, there are terrorist organizations that are defined by the State Department and the Attorney General. And support to those organizations. The OLF has not been so defined. Is that correct? Excuse me, Your Honor. Yes, Your Honor. It's not, it's not designated as a terrorist organization under the State Department or the Attorney General. Yes, Your Honor. Thank you. But the OLF openly publicizes its armed struggle against the Ethiopian government. It has taken credit for attacks against government soldiers and military property. Is it because that's a political act as opposed to a more general act that involves civilians? I think, Your Honor, this is, I think it's both a political act as well as an act of self-defense. The State Department reports indicate that the Ethiopian government has been very oppressive towards the Oromo people in Ethiopia. It targets them extensively. The Oromo people, which are two-thirds of the population of Ethiopia, do not even have the basic rights that the rest of the population enjoys. What do we, what do we do with the placing of landmines on railways in front of passenger trains? Yes, Your Honor. First of all, Your Honor, we dispute that allegation. The record in this case is not clear. Even the State Department report, and I cited that in my brief, said that the OLF did not, there is no independent evidence that OLF targeted civilians or laid landmines. But under the answer that you gave me earlier, it doesn't matter, does it? Because as long as the cause is just if there are some civilian deaths that are collateral to the attacks on government soldiers and government property, that's still okay. Your Honor, yes, it's okay if it's in, if it's incidental to an armed conflict, yes. But it's, but the board's definition in matter of S.K. does not take that into account at all. Under the board's definition, any kind of self-resistance, any kind of armed resistance against a government is terrorist activity. But in your, in your narrower definition, it wouldn't matter that there were 10 or 15 passengers on a train killed by landmines that were placed by the OLF, would it? Your Honor, I would, again, look at the totality of circumstances. I mean, in, unfortunately. The totality of the circumstances with regard to a particular attack, or the totality of the circumstances with regard to the nature of the armed struggle by the OLF generally in Ethiopia? The nature of the armed struggle generally in Ethiopia. So if we decide that it's okay because they're fighting against a totalitarian regime and attacking generally soldiers and military targets, that if they bomb an occasional passenger train and kill civilians, that's just the price of war? No, Your Honor. I believe that no, armed violence against civilians is not recognized by anyone. I mean, if the OLF targets civilians deliberately, then that is an act of terror. However, when, if OLF is involved in an armed struggle with the government of Ethiopia, then it's not a terrorist act because that's against the military. I just want to bring this to the Court's attention. During the Second World War, the Warsaw Uprising against the Germans in 1943, under the Board's definition that the people who took part in that uprising, for example, would also be terrorists or engaging in terrorist activities. The genocide in Rwanda is another example where there were armed militias actually after the genocide started in Rwanda in 1995. And the bombing of Dresden. Yes, Your Honor. Targeting civilians. Well, Your Honor, the bombing of – yes, Your Honor, I agree. But the bombing of Dresden was during, you know, that was an attack on – that was during the wartime. Yet, I would say that, yes, under the definition, that would be noncombatant targets and that would be terrorism. Hiroshima and Nagasaki, same answer? Well, Your Honor, that was during the wartime. During wartime, yes, I would believe that there are a lot of people who would, you know, who would rationalize that kind of conduct during the wartime. However, you know, civilians were killed during the wartime. There's no easy answer to this. The issue is whether a group that defends itself against a totalitarian regime that prevents itself from genocide, for example. Here's my problem with your argument. It's not that I'm unsympathetic to the argument. It's not that I think that a broad definition of terrorism, such as the statute seems to provide and that NRASK endorses, is an unproblematic definition. It includes lots of behavior that our government in the past has supported around the world in various countries and would support were it to happen again. But I'm having trouble finding solid ground for an alternative definition that's consistent with the statute that's not some in the totality of circumstances, slippery slope, well, gee, this maybe is a good idea. The only thing I've got that's really very solid is the wording of the statute and then the interpretation by the agency entitled to interpret it in matter of SK. Yes, Your Honor. As I mentioned earlier, the language, we don't have a quarrel with the language. I believe the language is clear. However, again, we go back to the Supreme Court rationale that when a statute So you're not mounting a facial challenge? You're mounting an as-applied challenge? As-applied challenge. We are not, we have no quarrel with the definition given by Congress in INA 212D3. We are saying that the way the Board has interpreted it, in the absence of that, I mean, if that's what Congress intended, of course, this statute would be upheld. But there's no evidence that that's what Congress wanted. In fact, I just want to bring one point that But let me just read you the language, and here's the trouble. Obviously, this is going to be a continuing argument through this and the next case. Terrorist activity defined, any activity that is unlawful under the laws of the place where it's committed and which involves, and I'll just choose one, the use of any explosive device, firearm, or other weapon or dangerous device with intent to endanger directly or indirectly the safety of one or more individuals or to cause substantial damage to property. That language is fairly precise, and it's extraordinarily broad. The term unlawful, that's somewhat ambiguous. I mean, what constitutes unlawfulness? I think that the Taliban regime in Afghanistan was unlawful. I mean, we recognize it as unlawful. You know, so if there is an armed conflict against them, does that constitute unlawful? I mean, does that constitute a terrorist activity? So the term unlawful, the alien in SK also argued the Burmese government, which is one of the most totalitarian regimes in the history of the world, was it came to power by a military coup. So I think that that term unlawful should be taken into account. What does the term unlawful mean? It says unlawful under the laws of the country. Of the country. In which the activity takes place. Why don't we hear from the government, and then you've got a few seconds, and your argument is going to be continued in the next case by Mr. Job. So we'll, in a sense, you're not finished even after you sit down. Thank you, Your Honor. Thank you. Good morning, Your Honors. Jeffrey L. Menken, U.S. Department of Justice for the Attorney General. Mr. Abdu was found statutorily ineligible for asylum and withholding because he admitted raising funds and recruiting members of the OLF, which is an organization that. Did you use the word thug? Pardon me? Did you use the word thug? I did not. Oh, what did you say? Recruiting? Not out loud. I misheard you then. You said pleaded to recruiting, and then I used the word thug. Raising funds and recruiting members. Oh, okay. I'm sorry, Your Honor. He admitted knowing that the OLF used force against the Army. As the Court acknowledged, terrorism has been defined by Congress rather broadly. But, and it's not ambiguous. The terms are very specific. The language is easily understood. Congress chose not to include the exceptions that counsel advocates, and rather hold sincerely, I don't doubt. But he wants us to rewrite the statute, and we can't do that here. Could I just ask you a question along those lines? If we accept the statute says what it says, that it's a broad interpretation, doesn't this create some really bizarre results? For example, wouldn't the U.S. military qualify as a terrorist organization for invading Iraq and Afghanistan, rendering any alien who supported our military ineligible for asylum or withholding of removal? I don't think, Your Honor, we need to resolve that hypothetical. And I know that that's very touchy and raises huge political questions. But on the facts of this record. Maybe we don't need to resolve it, but I would appreciate your addressing it. Well, Your Honor, I would say that at the end, the statute provides that the Secretary of Homeland Security has in his unreviewable discretion an opportunity to consider individual circumstances as a last resort. You slid off the question. Does that mean you concede that Judge Nelson was correct, that the invasion of Iraq is terrorism under this definition? I would not. So why isn't it? I would point out that I don't believe that the law of an individual country makes illegal an invasion to overturn an illegitimate regime. I think we're getting far afield here. This is a simpler case. You just slid into that, that it's not a law of the country if the regime running the country is illegitimate. Do you really mean that? Because that really opens the door to all kinds of things that you, I don't think, want to open the door to. Well, also, you look at the question of intent. What is the intent of the actions of the United States Army? It was not to destroy gratuitously property. It was to engage in and you just use the word gratuitously. The statute says destroy. Yes. Your Honor, the outcome of this case does not turn on these rather sensitive and I would say inflammatory political questions. Well, these may or may not be inflammatory, but the question is what does the statute mean and how broad is it? I mean, their argument, I'm trying to understand their argument sympathetically even though I'm having difficulty with it given the words of the statute. But it seems to me that the words of the statute are so broad as to cover activity by the United States in another country if it violates the law of that country and if it engages, if it involves the use of a firearm that, whatever the words of the statute are, intent to endanger directly or indirectly safety of one or more individuals or cause substantial damage. Boom, there you are. That's the definition.  S.K. or the matter of S.K. says that it is to be defined broadly and to not take into consideration the motives of the actor. Congress has not attempted to rewrite the statute following S.K., so therefore I think we can presume that the decision there comports, properly interprets the statute and is entitled to deference in that sense. What we have here. Now, let me make sure that I've understood. I so far have not heard anything other than sort of words like I don't want to answer that or it's inflammatory or it's ticklish or it's a delicate political question as to why the United States is not engaging in terrorism under this definition when it acts in a country in violation of the laws of that country and kills people and destroys property. Am I understanding correctly that you have no argument as to why that does not constitute terrorism under that definition? Roberts, substantially above my pay grade to make a definitive definition as to whether the U.S. Army is engaging in terrorist activity. I would say that we have. Within the meaning of the statute. I'm not asking you anything other than just read me the statute. Sure. And Your Honor had read the statute. And the terrorist activity is defined as any activity, unlawful where committed, that involves the use of an explosive firearm or other weapon or dangerous device other than for mere personal monetary gain with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property. And that means that if the United States is acting in Iraq in violation of the law of the regime when it is acting, and if it is endangering people or property in so acting, sounds like his definition. Well, let's. I'm just reading the words. Well, let's see if there's a case that comes in involving that fact pattern, and we can talk about it. But on the facts before the Court, there's virtually no question that what the OLF was doing. There's no compelling record evidence that contradicts the finding that what the OLF was doing met the statutory requirements. And we're not here to create exceptions that counsel advocates. Not only does the S.K. decision say that. This Court has said that in the Chube case, which we submitted a Rule 28J letter regarding. The Seventh Circuit has more or less said the same thing in the Hussein case. We would be creating a circuit split, would we not, if we were to rule in favor of the petitioner given the existence of the Seventh Circuit's decision? Most certainly. And I think that we would be creating a split within the circuit given the Chube decision, albeit an unpublished decision. Gee, who was on that panel? But there's some other issues that I would be happy to address. But the bottom line is, however meritorious the arguments that counsel would make to a congressional committee rewriting or amending the statute, we're not that committee. And the statute is quite clear, as applied to the facts of this case, that what this organization did and what Mr. Abdu did is what the board said and what the immigration judge said. Counsel, let me ask you another question, which may not be as disturbing. Let's assume the O.L.F. qualifies as a terrorist organization. What evidence is there that the petitioner reasonably should have known about these terrorist activities? Well, Your Honor, there's a finding that, if I can just check my notes, that Mr. Abdu, in fact, knew of these activities. He knew that the O.L.F. was attacking the Army. The military targets, yes. But what did he know about targeting civilians? There's no requirement in the statute, Your Honor, that these attacks be targeted at civilians. It's enough that he knew that there were firearms attacks against the Ethiopian government since 1992. And I would point out that at the time of the immigration court hearing in December of 2002, Mr. Abdu said that he was still continuing to supply funds to this organization, even though by then more information had come out about its activities from its own communiques. There are explicit findings in the State Department reports that this organization used landmines, which resulted in numerous civilian deaths and injuries. This is the 2001 country report at record page 408. Similar finding in the 2000 country report at 432 and 433. It's characterized as an illegal organization, which advocates the violent overthrow of the current government. They have political aims. And it's not for us to say whether those were good aims or not. It is for us to say that they engaged in these activities. And as a result, Mr. Abdu is not eligible for all of the relief that he seeks. I would point out that he was, in fact, granted regulatory deferral or removal. So essentially, at the end of the day, he's not going anywhere, which ---- What does that mean as a practical matter? He can be removed if the conditions change at some point? As a practical matter, Your Honor, it means that deferral can be revoked under certain conditions. I should say that that's the technical matter. As a practical matter, I'm not aware, my office is not aware that there's any culling of these individuals to see if they still qualify or not. As long as he doesn't bring himself to the attention of the United States by, let's say, committing a crime of some sort, I think he's not going anywhere. Is he entitled to a green card in this status? No, Your Honor. That he's receiving deferral does not put one on the track towards status. Does that mean that he's not allowed legally to work in the United States? I believe that work authorization does not result from deferral. So he gets to stay here and he's not able to work? I believe so, Your Honor. So we're putting him in a position where if he wants to support himself, he either goes on the dole or steals? He does get to not go back to Ethiopia, so there's no small. That's not my question. We're putting him in a position where he has no ability to work legally in this country? That is a consequence of deferral of removal. There was one other point that I would like to touch on, and that is that I think counsel overstated the jurisdictional problem, that the jurisdictional bar goes to asylum. It does not go to withholding of removal. I do think that there's a question as to whether asylum is even before the court because it may not have been preserved below. I can address that if the court would like. It was not in our brief, and I apologize for that. But unless there are other questions, I'd be happy to yield back my time with the conclusion that we have not heard any compelling record evidence to contradict the board's and the immigration judge's finding, and I would ask that the court deny the petition on those grounds. The burden being here on Mr. Abdu throughout. Okay. Thank you. Thank you very much.
judges: Nelson, Fletcher, Tallman